Springer v. State.

Opinion delivered May 3, 1920.

1. EMBEZZLEMENT—SUFFICIENCY OF EVIDENCE.—Evidence in a prosecution for embezzlement *held* sufficient to sustain a conviction.

2. WITNESSES—CROSS-EXAMINATION.—In a prosecution of the treasurer of a fraternal organization for embezzlement, the court erred in refusing to permit accused, in cross-examining a witness for the State who had audited the books, to introduce certain vouchers and compare them with the entries on the books for the purpose of testing the accuracy of his audit and to show that some of the vouchers were not credited in the accounts and included in the audit.

3. CRIMINAL LAW—EVIDENCE—ACCOUNT BOOKS.—In a prosecution for embezzlement of the treasurer of a fraternal organization who was illiterate and knew nothing of bookkeeping, and who had others make entries in his books, he was not bound by them further than the testimony might go to establish their accuracy.

4. WITNESSES—CROSS-EXAMINATION AS TO WRITINGS.—In a prosecution for embezzlement, the fact that accused prior to the trial might have called in skilled bookkeepers and caused a comparison of vouchers in his hands with entries on the books affords no reason for denying him the privilege of having a witness for the prosecution, who was familiar with the books and had audited the same, to make that comparison in the presence of the jury.

Appeal from Lee Circuit Court; *J. M. Jackson,* Judge; reversed.

*Mann & McCulloch* and *R. D. Smith,* for appellant.

1. The evidence was insufficient to support a conviction of embezzlement.

2. The court erred in refusing to allow appellant to show by the witness, Hollingsworth, that certain orders had been issued by the secretary of the lodge upon appellant as treasurer and had been paid by him and which did not show upon the record books. The checks and vouchers offered in evidence should have been admitted, and it was error to exclude them, as they were on the books when the audit was made, and the audit was incomplete.

3. The court erred in modifying the instructions asked by appellant. Kirby & Castle's Digest, §§ 1966, 1954.

4. The judgment record is fatally defective in that it does not show that the jury were properly sworn. 25 Ark. 106; 25 *Id.* 83; 145 *Id.* 143; 4 Words & Phrases, 3417.

*John D. Arbuckle,* Attorney General, and *J. B. Webster,* Assistant, for appellee.

1. The evidence is sufficient to sustain the conviction and will not be disturbed.

2. There was no error in refusing to allow the witness, Hollingsworth, to show that certain orders had been issued by the secretary on appellant as treasurer and paid by him, did not show upon appellant's books at the time of the audit. The ruling of the trial judge was proper and no abuse of the court's discretion is shown.

3. There was no error in modifying the instructions asked. The appellant's objections were general. 129 Ark. 180. He did not request a specific instruction. 114 *Id.* 409.

4. The record has been amended so as to show that the jury were duly empaneled and sworn.

McCULLOCH, C. J. Appellant, W. R. Springer, was convicted in the circuit court of Lee County, under an indictment charging embezzlement of funds, the sum of $2,756 in gold, silver and paper money, the property of District Grand Lodge No. 11, Grand United Order of Odd Fellows in America, an incorporated fraternal benefit association for colored people.

Appellant was treasurer of what is termed the burial fund of the organization, and resided at Marianna and kept his office, books and deposits of funds at that place. C. S. Johnson was the secretary and kept his office, books, etc., at Arkansas City. Appellant and Johnson were elected to their respective offices when the organization was instituted in the year 1915, and continuously served as such, being re-elected from year to year at the annual meetings of the Grand Lodge, until August, 1919, when appellant's default is alleged to have occurred. At the meeting of the Grand Lodge in August, 1919, the two offices of secretary and treasurer were consolidated and

Johnson was elected to the office and appellant passed out of office. An audit of appellant's books by an examiner of the State Insurance Department was commenced on July 28, 1919, and concluded on August 5, 1919, and a shortage of funds in appellant's accounts amounting to $2,756.81 was discovered and reported. The audit covered the whole time of appellant's official incumbency up to the date of the audit and it was found that he had received, as treasurer, funds of the association amounting to $28,237.28, that he had properly disbursed $24,-207.73, leaving a balance of $4,029.55, for which he was accountable and that he had on deposit in banks $1,272.74. Johnson collected the funds and forwarded them by checks to appellant, who deposited the same in four banks in Marianna. The funds were disbursed by orders drawn by Johnson on appellant who gave checks on the banks to cover the orders. Johnson sent the orders to appellant and the latter gave bank checks to the respective persons in whose favor the orders were drawn. All of these facts were established by testimony adduced at the trial and were undisputed, except as to the amount of the balance of undisbursed funds, for which appellant is said to be accountable. The testimony adduced by the State tended to show that appellant was short in his accounts of funds in the sum of $2,756.81, and that he embezzled that sum of money. Appellant testified that he was not short in his accounts, and that a correct audit of his books and vouchers, a considerable portion of his vouchers not being on the books and not taken into account by the examiner when the audit was made, would show that he had not embezzled any funds of the association.

Mr. Hollingsworth, the examiner, testified in the trial and gave the details and result of his audit. He testified that he went to Marianna on July 28, 1919, and commenced the audit, appellant and Johnson both being present, but that he did not finish the audit that day and returned to Little Rock to complete the work which was done on August 5, 1919. He testified that appellant's

books and vouchers were loosely kept, but that he took into account the vouchers produced by appellant and gave proper credits for them; that he informed appellant before he left Marianna that there was a shortage amounting to more than $2,000 and that appellant admitted it and promised to make good the shortage. The witness further testified that he examined appellant's bank books and went with him to the several banks and found balances aggregating $1,272.74 on deposit. Johnson's books were audited at the same time. The witness testified that appellant and Johnson were both present in Little Rock when the audit was completed and that appellant conceded its correctness and again promised to make good the shortage. Witness also testified to other circumstances occurring during the audit, tending to show evasive conduct on the part of appellant, and there was other testimony adduced tending to show that appellant conceded the amount of shortage and promised to make it good.

It is earnestly insisted by counsel for appellant that the testimony was insufficient to establish the commission of the crime charged, but we are unable to agree with that contention. There was a conflict in the testimony, but that adduced by the State was credited by the jury, as manifested by the verdict, and was sufficient to sustain the finding of the jury. The conviction does not rest entirely on the audit of the accounts, as claimed by counsel for appellant, but it is also supported by appellant's own admissions, as established by the evidence. During the progress of the cross-examination of Mr. Hollingsworth, appellant's counsel produced a large number of vouchers which were claimed not to be included in the audit and proposed to interrogate the witness as to whether or not they were shown on the books as credits, and to have the witness compare them with the entries on the books for the purpose of ascertaining whether or not they had been credited. The court refused to permit this to be done. Exceptions were duly saved, and the court's ruling is assigned as error.

The bill of exceptions recites that portion of the record, as follows:

"Q.  Here's a receipt and order from C. S. Johnson, secretary, to Springer, to pay out $50 on July 14 to J. S. Isham, did that appear on his books at the time?

"A.  I am not sure; I couldn't say, sir.

"Q.  I will have to ask you to refer to the books and see?

"A.  Now it may take a good while to find it, and I want to tell you why.  He ran it any way he happened to grab up a bunch and post them.

"Q.  Can you give me the order?

"Court:  We are not going to spend all the afternoon looking for these things; you had the books, they have been in your possession and you have had ample opportunity to check them and mark them on the books.

"Mr. Smith:  We offer these checks to show by this witness that they were given before this audit was made and were paid out and should be a credit to Springer, and that they are not on the books and were not included in the audit that this witness made.

"Court:  The motion is overruled.

"Note our exceptions to the ruling of the court."

Later, Mr. Hollingsworth was again called to the witness stand by the State, and he reiterated his former statements about crediting appellant with all the vouchers he could produce, whether they had been previously entered on the books or not.  On cross-examination the witness stated that in several instances he had given credit for orders not entered on the books, and counsel for appellant then renewed the offer in the following language:  "In view of this, I ask leave to again have the witness go over and see if these orders appear on the book."  The court refused to permit this to be done, and exceptions were saved.

The trial court erred in refusing to permit appellant to introduce the vouchers and to have the witness, as a part of the cross-examination, to check over those vouchers and compare them with the entries on the books for

the purpose of testing the accuracy of the audit and to show that all of the vouchers were not credited on the accounts and included in the audit. The conviction depended largely, though not entirely, upon proof as to the correctness of the accounts on appellant's books and the accuracy of the audit made by witness, as the examiner for the State Insurance Department. That testimony, in connection with appellant's admissions, was, as before stated, the foundation which supported the verdict. The witness then on the stand was the man who had made the audit, and proof of its accuracy depended solely on his testimony. It was important, therefore, that appellant should have ample opportunity to test out in every legitimate way and from every available source the question of the accuracy of the audit. Appellant testified that he was an uneducated man and knew nothing about bookkeeping—had never been to school a day in his life—that he made none of the entries on the books himself, but from time to time as he gathered upon a bundle of items, both debits and credits, he would get first one person and then another to make the entries on the books for him. He was unable to show himself whether or not the books were correct or whether or not the audit made by Mr. Hollingsworth was correct, except that he discovered that he had additional vouchers which were not on the books, showing an additional credit of about $2,900 in his favor, thus wiping out the alleged shortage completely. It will be seen, therefore, that, according to this testimony the entries on the books were not those of appellant himself, and he was not bound by them further than the testimony might go to establish their accuracy, including the testimony as to his own admissions, and also by comparison with the bank books and vouchers which were kept.

The fact that appellant might, prior to the trial, have called in others skilled in bookkeeping and caused to be made a comparison of vouchers on hand with the entries on the books does not afford sufficient reason for denying him the privilege of having Mr. Hollingsworth,

who was familiar with the books, to make that comparison in the presence of the jury.

The list of vouchers has been brought up with the record for our inspection, and it does not appear that they are so numerous as the process of comparison would have taken up an undue amount of the court's time. We have no means of ascertaining from the record whether or not all of these vouchers were credited on the books, but appellant was entitled to have that fact demonstrated before the jury by the comparison of the list of vouchers with the entries on the books. Appellant contended that there was no shortage and denied that he admitted the shortage and stated that when he was informed that the books showed a shortage in his accounts, he told the examiner that if there was in fact a shortage he was ready to make it good. He introduced in evidence the certificate of Johnson, in the form of a letter, showing that about six months before the alleged shortage was discovered, appellant, as treasurer, was only chargeable with about $150, and this tended to show that the shortage occurred, if at all, between the date of the letter and the date of the audit of the books by Mr. Hollingsworth. Appellant testified further that when Mr. Hollingsworth came to Marianna to make the examination, he was not expecting the books to be audited that day; that he hurriedly got together the papers for the examiner, and that since the audit was made he had discovered many more vouchers, which were produced in a bundle and sought to be introduced in evidence and have checked up in the presence of the jury. The denial of the privilege of introducing this testimony was important and operated prejudicially to appellant's rights to the extent that it calls for a reversal of the judgment.

Other grounds for reversal are argued, but we find no other error in the proceedings than the ruling mentioned above. The judgment is therefore reversed and the cause is remanded for a new trial.